**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TONY R. PRICE,

        Plaintiff,

     v.                            Case No. C-1-03-734

MARATHON ASHLAND PETROLEUM,

        Defendant.

## <u>ORDER</u>

This matter is before the Court upon defendant Marathon Ashland Petroleum LLC's motion for summary judgment (doc. 27), plaintiff's response (doc. 30), defendant's reply (doc. 34), the parties' supplemental memoranda (docs. 40, 41), and defendant's response (doc. 42).

### I. Introduction

Plaintiff Tony R. Price brings this action against defendant Marathon Ashland Petroleum LLC (Marathon) under the Jones Act, 46 U.S.C. Section 688, for negligence and under general admiralty and maritime law for unseaworthiness, maintenance, cure, and wages. Marathon is a limited liability corporation and a common carrier by ship. At all times pertinent to this litigation, Price was an employee of Marathon who was acting within the scope of his employment with Marathon.

1

Plaintiff filed the original complaint in this action on October 24, 2003 (doc. 1).  The complaint alleges that on May 6, 2003, while in the course of his employment, plaintiff was injured after being negligently assigned work activities that defendant knew, or should have known, were beyond plaintiff's physical capacity.  Specifically, plaintiff states as follows:

> On or about May 6, 2003[,] Plaintiff was in the course of employment when he was negligently assigned to work activities involving the carrying of a too heavy lock line on unreasonable slippery dock when he suffered injury.

(doc. 1, ¶ 4).  Based on this alleged violation of the Jones Act and general admiralty and maritime law by Marathon, plaintiff seeks damages for pain and suffering, loss of earnings and earning capacity, medical expenses and mental anguish, and attorney fees.

After Marathon had filed the motion for summary judgment, plaintiff sought to expand the scope of the case by filing a motion for leave to amend and a proposed amended complaint (doc. 32).  Plaintiff asserted that he wished to amend the complaint to clarify and plead claims relating to defendant's assigning plaintiff job duties that defendant knew, or should have known, were beyond his physical capacity, and which resulted in new injury and aggravation of a pre-existing back injury, and assigning plaintiff to vessels that were being operated in an unseaworthy condition due to undermanning, understaffing, or inadequacy of crew.  The proposed amended complaint added allegations that over the course of approximately fourteen months, including May 6, 2003, Marathon negligently assigned plaintiff to duties that were beyond his physical capacity and negligently exposed him to hazardous and treacherous decking on that specific date, which resulted in severe and permanent disabling injuries to him.  The proposed amended complaint also added claims that went beyond plaintiff's original claim of negligent assignment of work duties.  The Court denied the motion for leave to amend on the ground that it was

2

untimely and would unduly prejudice Marathon since the discovery period had closed and Marathon had filed a motion for summary judgment (doc. 37). Accordingly, the scope of this case is limited to plaintiff's original complaint, which specifically alleges that he sustained an injury on May 6, 2003.

## II. Motion for summary judgment

Defendant Marathon moves for summary judgment on the ground that plaintiff is unable to support a claim for negligence under the Jones Act or a claim of unseaworthiness arising from the May 6, 2003 incident alleged in the complaint. Marathon claims that although it knew that plaintiff had prior back problems and had undergone back surgery, it did not act unreasonably by assigning him deckhand duties given that both Price's physician, Dr. Bagley, and Marathon's physician assistant, Mr. Lavelle, had cleared him to return to manual labor.

Marathon further argues that summary judgment is appropriate because the log sheets demonstrate that Barge 510, the barge on which plaintiff was allegedly working on May 6, 2003, was not in tow on or around that date with the vessel to which plaintiff was assigned as a crew member, the *M/V Tri-State*; none of the barges in tow with the *M/V Tri-State* was freshly painted as alleged by plaintiff; and plaintiff subsequently denied in his Responses to Marathon's Request for Admissions that the slip and fall on May 6, 2003, was the cause of his back injury. See Marathon's Motion for Summary Judgment, Exh. F.

Plaintiff responds that a jury question exists as to whether Marathon negligently assigned him to job duties that were beyond his physical capacity. Specifically, plaintiff argues that despite knowing of his prior back problems, Marathon failed to conduct a Functional Capacity Exam before releasing him to work as a deckhand and failed to communicate the deckhand

3

position Functional Job Site Analysis to plaintiff's treating and evaluating physicians, both of which were required by Marathon policy.  Plaintiff contends that Marathon breached its duty to provide a reasonably safe work place by negligently assigning him job duties that were beyond his physical capacity and which Marathon knew, or with the exercise of reasonable care should have known, were beyond his physical capacity.  Plaintiff also claims that although he is unsure of the exact barge number on which he slipped and fell while carrying a heavy lock line on May 6, 2003, the work surface on which he slipped was slick and hazardous because it lacked sufficient non-skid protection.

Marathon replies that it acted reasonably in relying on the following information: the medical release provided by plaintiff's treating physician in October 2002; the normal physical exam results issued on two separate occasions, once in October 2002 and once in December 2002, by Marathon's physician assistant; statements by plaintiff's surgeon that a Functional Capacity Evaluation was unnecessary if examination and history indicated he could return to work; and plaintiff's own statements that he could return to work and had in fact been performing deckhand duties since April of 2002.  Marathon suggests that determining that it acted unreasonably would create a duty impossible for it to meet.  Marathon also asserts that plaintiff has not stated a claim for negligence or unseaworthiness based on the specific incident of May 6, 2003, because that scenario is factually not possible and because plaintiff has subsequently denied that the incident caused his injury.  Additionally, Marathon argues that plaintiff has provided no support for his contentions because the evidence referenced in his response to the summary judgment motion is inadmissible.

Marathon has filed a supplemental memorandum in support of its motion for summary

4

judgment to incorporate the deposition testimony of Dr. Shields, plaintiff's treating surgeon.  In

the supplemental memorandum, Marathon asserts that Dr. Shields's testimony that plaintiff's

injury recurred in the same area as the prior injury, the L3-4 level, supports Marathon's summary

judgment motion.   Marathon argues that because plaintiff signed a release of Marathon from

liability for any recurring injury to the L3-4 level as part of the parties' settlement for plaintiff's

1999 back injury and resulting surgery, plaintiff's claims cannot survive summary judgment.

 In his memorandum in response to Marathon's supplemental memorandum, plaintiff

argues that there is no legal or factual support for Marathon's position that his 2003 back injury is

a natural progression of the injury that he suffered in 1999 and is therefore covered by the release

plaintiff executed in January of 2002.

### III. Summary Judgment Standard

 Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination

of an action.  This Court may only grant summary judgment as a matter of law when the moving

party has identified, as its basis for the motion, an absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

 The party opposing a properly supported motion for summary judgment "may not rest

upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing

that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)

(quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of

the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.

*Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

 The court is not to weigh the evidence and determine the truth of the matter but is to

decide whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  There is no genuine

issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party.  *Id.* at 249 (citing *Cities Serv.*,  391 U.S. at 288-289).  If the evidence is

merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly

probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted.  *Anderson*, 477 U.S. at 249.

### IV. Applicable law

The Jones Act provides a cause of action in negligence for any seaman injured in the

course of his employment.  The Act provides, in pertinent part, as follows:

> Any seaman who shall suffer personal injury in the course of his employment may,
> at his election, maintain an action for damages at law, with the right of trial by
> jury, and in such action all statutes of the United States modifying or extending the
> common-law right or remedy in cases of personal injury to railway employees
> shall apply . . .

46 App. U.S.C. § 688.  The Jones Act affords rights to seamen parallel to those given to railway

employees under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq.  *Perkins v.*

*American Elec. Power Fuel Supply, Inc.,* 246 F.3d 593, 598 (6th Cir. 2001).  FELA states that,

> Every common carrier by railroad . . . shall be liable in damages to any person
> suffering injury while he is employed by such carrier . . . for such injury or death
> resulting in whole or in part from the negligence of any of the officers, agents, or
> employees of such carrier, or by reason of any defect or insufficiency, due to its
> negligence, in its cars, engines, appliances, machinery . . . boats, wharves, or other
> equipment.  45 U.S.C. § 51.

The "ordinary prudence" standard for a showing of negligence applies to a Jones Act

claim.  *Perkins,* 246 F.3d at 598.  Once the claimant proves negligence, he need only show that

the negligence caused his injury in whole or in part.  *Id.*  Thus, for claims filed under

the Jones Act, the court must determine "whether the evidence justifies the conclusion that the

employer was negligent and that the employer's negligence played any part, however slight, in

producing the injury to the seaman." *Id.* The Sixth Circuit has cautioned that "in light of the 'policy of providing an expansive remedy for seamen, submission of Jones Act claims to a jury requires a very low evidentiary threshold; even marginal claims are properly left for jury determination.'" *Daughenbaugh v. Bethlehem Steel Corp., Great Lakes S.S. Div.,* 891 F.2d 1199, 1205 (6th Cir. 1989) (citing *Leonard v. Exxon Corp.,* 581 F.2d 522, 524 (5th Cir. 1978)).

The Sixth Circuit has interpreted the Jones Act as including a duty of shipowners to provide crew members with a safe work place. *See Rannals v. Diamond Jo Casino,* 265 F.3d 442, 449 (6th Cir. 2001). A shipowner has a duty to assign employees to work for which they are reasonably suited, and the shipowner breaches that duty if it negligently assigns an employee to perform work that is beyond his capacity, i.e., if the shipowner assigns work that it knows, or should know, exposes the employee to an unreasonable risk of harm. *Fletcher v. Union Pacific Railroad Co.,* 621 F.2d 902, 909 (8th Cir. 1980). Whether a work assignment is negligent is a question of fact. *Id.* (citations omitted).

The duty to furnish a seaworthy vessel under general admiralty and maritime law is separate and distinct from a shipowner's duty to exercise reasonable care under the Jones Act. *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 549 (1960). Under the general admiralty and maritime law, an employer has an absolute duty to provide a seaworthy vessel. *Id.* A vessel is seaworthy if the vessel and its "appurtenances [are] reasonably fit for their intended use." *Perkins* 246 F.3d at 602. A vessel may be unseaworthy due to a number of conditions, including defective gear, appurtenances that are in disrepair, or an unfit crew. *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 499 (1971). To prove an unseaworthiness claim, the plaintiff must show that "the unseaworthy condition of the vessel was the substantial and direct or proximate

7

cause of the plaintiff's injuries." *Perkins* 246 F.3d at 602.

## V. Opinion

Upon a careful review of the record, the Court finds that there are genuine issues of material fact underlying resolution of plaintiff's claims asserted in this action against defendant Marathon.  The claims are therefore not suitable for summary judgment.  Accordingly, defendant's motion for summary judgment is **DENIED.**  This case will proceed to trial in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**

S/ Herman J. Weber
HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT

J:\HJWA\03-734msjjonesactPUB.wpd